All rise. The Illinois Court of Divisions is now in session. The Honorable Justice Randy W. Mitchell is presiding. Good morning folks. Please be seated. If our clerk could call our first case, please stand. 125-05-46, GF Judgments LLC v. Estate of Evgeny Freidman Good morning, counsel. We've reviewed the briefs and the record of the case, so you can certainly take that into account with your presentations this morning. We're allotting 20 minutes aside with an additional 5 minutes for rebuttal for the appellant, so you don't have to reserve any extra time. So with that, we'll get started. Good morning, Your Honors. May it please the Court. My name is Bruce Mankus, and I am here today on behalf of three Illinois limited liability companies. As you write, 4532 North Elston LLC and 4514 North Elston LLC. I will refer to the three appellants today as the LLCs or the Illinois LLCs. Originally, the LLCs were owned by two individuals, one of whom was Evgeny Freidman. In approximately June of 2015, Freidman established two trusts, one called the Lindy Funding Trust and the other one called the Evelyn Funding Trust. And he purported to transfer his interests, his membership interests, in the three LLCs to these two trusts. This happened at approximately the same time as Citibank was obtaining a judgment against Mr. Freidman in state court in New York. Now, I am not here today to argue that debtors can avoid paying their legitimate debts by transferring their assets to trusts in anticipation of being sued. I am not even arguing that these specific transactions and transfers made by Mr. Freidman in 2015 were legitimate. And, in fact, the Bankruptcy Court for the Eastern District of New York found that with respect to at least some of those transfers, and at least with respect to Citicorp, the transfers were improper and were fraudulent. So once that binding is made, isn't it binding as to any suit by any creditor against Mr. Freidman? No, Your Honor, for a few reasons. First of all, by binding, I assume you mean that... That they can use it as a collateral estoppel. Collateral estoppel requires that the parties to the second case, the case in which collateral estoppel is asserted, be the same as the parties to the first case. But not the party asserting collateral estoppel. If I want to assert it against somebody, and I wasn't a party to the first case, but there's a binding finding as to you, if I'm suing you, I can use it. That's what collateral estoppel is. I can use it even though I wasn't a party to the first case. Because there's been a binding that you and your LLC are one. Your Honor, under Novak v. St. Luda, I believe that it could be used by some parties, but it can't be used against a defendant or a respondent in this case, who did not have a chance to assert, and did not have a privy asserting, those arguments in the court in which, the first court. I'm sorry, what business is it of your client, what deaths or piercing happened to one of his partners? What business or concern is it of your client? Well, to perhaps oversimplify it, the most important concern is that in this case, Mr. Friedman died. And as a result, Section 9.3 of the, each of the three operating agreements, provides that his membership interest comes to an end upon his death. So... But did you litigate that issue in the circuit court? We did. Did you file a response? It seems to me, you tried to litigate the underlying judgment, which, in my opinion, you have no standing to do. Yet, you have a valid response, or a potential valid response, that we don't have any assets belonging to the debtor. Your Honor, we never told the trial court that the trust were the owner of the membership interest, or that Mr. Friedman or his estate were the owner. The way it came was that we gave, pursuant to the citation to discover assets, we gave a copy of the operating agreements to the judgment creditor, GF Judgments, and they looked at them and said, I see that the trust are the owners. So, that's how it came up. We did tell the trial court that we believed it was unfair, because the result would be that the judgment creditor would get their hands on assets, which they would never have gotten if Mr. Friedman himself was a member. So, I think all three of us sat in Chancery, and so, in a typical case, you register a foreign judgment, and you say it's a valid judgment, and then we send it off to Miscellaneous Remedies for collection, the issue of citation to discover assets, the respondent to the citation says, yes, I have assets belonging to, no, I don't have assets belonging to, and if there is a dispute about it that's not readily apparent on the face, you file a deck action to have that issue determined. Did you do that here? Yes, we did. We said we did not have assets belonging to the judgment debtor. Did you file a deck action to have that matter resolved? We did not file a separate deck action. So, I think we've all had many of those where they file the deck action, and then you ask, in Cook County, obviously, you ask to have the collection matter stayed, or transferred or consolidated with the deck action. Did you do that here? We did not, Your Honor. We believe that it's under 5-2-1402. It's the burden of the judgment creditor to show that the third party owns assets of the debtor. Yes, you're basically asserting affirmative defense, and they disagree. So, we've got a valid judgment that they've already established, and the paperwork shows that they're a part of this LLC, so you're either to turn it over or litigate your affirmative matter. Well, first, there was no dispute in the court below that Mr. Friedman had died. We said, essentially, we don't know whether Mr. Friedman or the trusts were the owner. The New York court concluded that Mr. Friedman was the owner for purposes of that proceeding. We don't think that that can be translated to this action, but it was the burden of the judgment creditor to establish that our statement that we did not own assets belonging to the judgment debtor was false. But what you're really saying is the judgment debtor actually owed that money back to us, the LLCs, because he died, so that money should have come back to us. It's not really his money. That's what you're saying. Not really, Your Honor. It wasn't money. What terminated upon his death was his interest. Now, Judge Hanlon assumed that that meant that the interest reverted to the company, but that's not how the operating agreements are written. The interest terminates. It doesn't revert. It simply leaves one member. And shouldn't you have litigated that issue so that a court of competent jurisdiction could discern whether or not that actually, indeed, was what happened or whether or not that was actually another fraudulent transaction or provision in the trust that he was still trying to perpetuate, even after death? I believe, Your Honor, that that was the burden of the judgment creditor to show that. The judgment creditor under DeSio's case should have initiated a separate proceeding to determine that the trust were the alter ego of Mr. Friedman. At that proceeding, the trust would have been present, and no matter what the outcome was, at least the LLCs would have had some certainty as to who the member was. So you're saying it was incumbent upon the creditor to file the deck action, not your client who's asserting this matter? That's exactly right, Your Honor. I am arguing that the charging order entered into in this particular case was improper because, among other reasons, after Friedman's death, after the bankruptcy court entered its judgment, there was no longer any interest in the LLC owned by Mr. Friedman or by the trust. A fact that the New York court says is true. Judge Hanlon said he didn't have jurisdiction to decide that. He said he didn't have jurisdiction to decide whether Mr. Friedman's death meant determination of his interest. But he did have jurisdiction, he said, to pierce the veil and hold that the trusts were liable for Mr. Friedman's debts. He didn't pierce the veil. He relied upon the New York court's veil piercing. That was the judgment creditor's argument. But we feel that the application of collateral estoppel did mean he was determined. He was entertaining the proceeding in his courtroom because he decided that collateral estoppel could be applied. But that's what collateral estoppel is. It's that you take a judgment from another court and apply it in your court. You don't retry it. That's what collateral estoppel means, right? Right, but to determine that it applies in your courtroom, you have to determine that certain prerequisites were met, that the issues were the same, that the law was the same. And Bruce will explain that the issues were not the same. New York has a different test for piercing the veil than Illinois. But once again, what business or concern is it of yours, clients, what debt your partner has or owes someone else? It's like, oh, well, I have my friends and, well, they owe a debt. Well, you know what? I'm going to go stick up for it. I'm going to go meddle into their financial affairs. What gives your clients the right to do that? If Mr. Friedman died, and Mr. Friedman did die. I'll agree with you. If Mr. Friedman was the owner of the interest, as the New York judge found, then his interest died when he died. And we don't have to pay him further distributions. There will be no further distributions. There's nothing today that stops either side from filing that deck action, no matter what we rule today. Correct. No matter what you rule today, if you rule in favor of the LLCs, the judgment creditor can still file that deck action. And vice versa. Well, the problem is that if we're forced to file a deck action, there could be inconsistent judgments. How is that? The estate of Mr. Friedman has already indicated it believes that this interest is property of the estate. Distributional interest is the property of the estate? He didn't say. Just add all necessary parties. Excuse me? Just add all necessary parties to the deck action. Yes, but again, I go back, Your Honor, to that stands the burden of proof in a 2-1402 action on its head. So if we rule in favor of the creditor, and say the charging order is valid, and then they start taking actions to actually enforce it, your client is just going to stand by and not file the deck action? I honestly don't know, Your Honor. Well, first of all, we have a bunch of possibilities. First, our deck action may be found to be not timely, may be barred by all sorts of reasons. Second... That's never stopped anybody from filing a deck action. Judge Hanlon's ruling itself might be found to have collateral estoppel effect in the deck action. But he said he didn't... He lacked jurisdiction. Which, of course, is an overstatement. He had jurisdiction. It's a court of general jurisdiction. But he didn't decide the issue. Right. To pick up on that point, though, that was... It's a court... There's no question the court had jurisdiction. Our point is, and the point in Stiles was, there's not authority under Section 2-1402 to pierce fails in supplemental proceedings. I agree with you. But I think we all agree with you that a supplementary proceeding, you can't get into fail-piercing. But that's not what the judge did. The fail was already pierced in New York. Right. And he decided that the New York judgment was entitled to a collateral estoppel effect. Well, you could say he doesn't have jurisdiction... the right to question a finding of fail-piercing by another court. He can't make a finding that a fail should be pierced, and he can't dispute a finding that a fail could be pierced if collateral estoppel should be applied. He's not in that business. But he can be in the business of saying, this fail should be pierced. This debtor is the same as that debtor. They are merged, and we're going to treat them as one and the same. Right. Another argument we made, Your Honor, was that under the New York law, fail is pierced as to particular creditors. This judge... The judge in the New York bankruptcy proceeding pierced it as to Citibank. Now, there's briefing on both sides on this, but our argument is that's not necessarily a fail-piercing as to the bank in question. Here's Sterling Bank, who sold their judgment to GF Judgments. So that's another reason you're saying collateral estoppel doesn't apply here. Correct, Your Honor. So what happened was that Judge Hanlon reached a result that would have been impossible if Friedman had continued to be the owner. There would be no interest left to attach. And that's what makes this different from cases cited by the judgment creditor in which the court said, well, what's the big deal? You owe the money to A or you owe it to B. Why do you care who you pay it to? Well, because we don't have to pay it if we owe it to A. So really, truly the only way to resolve this matter is for someone to go file a deck action and to determine whether or not, even if the judgment is valid, upon his death, it transferred to your clients. That's correct. And nobody took the time to do that. Yes, if the trust is a true member, then ultimately after that deck action, GF Judgments will be successful at collecting because we will be making distributions to the trusts. If the court finds that, as the New York court found, that Friedman is the judgment creditor, to treat Friedman, I'm sorry, as the member, then we won't have to make those payments. We may have other obligations, but we won't have to make payments on his distributional interest. Well, I'm sorry, because you said that upon death, the interest transfers, so it really doesn't matter. No, the interest terminates. I'm sorry, terminated. It terminated. But if the trust is the true owner, then there's no reverse of the interest. That's right, because the trust didn't die. It wouldn't fall under that category. And you may not know the answer to this, but is there any reason that the question as to whether they are one and the same is a different question as to whether or not the interest is owned by the trust or Mr. Friedman? Is that a different question? Is that a different test? I don't think so, Your Honor. I think that the way Judge Carl Craig in the bankruptcy court in New York phrased it, if the transfer was fraudulent, then the transfer is disregarded. So it's not that they both owe the debt, it's just that you ignore the transfer, and the owner remains Mr. Friedman. The owner, correct. I also want to talk about standing. Standing was not raised in the trial court, although there were a couple of comments. The judge, in his opinion, for example, said, I find your desire to litigate this issue curious. So perhaps in that oblique way, he raised standing. I don't think it's raised by name, by the judgment creditor, or by the judge in that court. But it seems to be an issue in this court. And I think fortunately for our side, the Illinois Supreme Court recently decided the Fosler v. Walgreens case. In that case, it found that there were two kinds of standing. One kind of standing they called statutory standing. That's the kind which was at issue in the Biometric Information Privacy Act cases. That's when a statute specifically says, so-and-so can bring a suit. In the biometric privacy cases, it was anybody aggrieved by a violation of the act can bring a suit. But in this case, we have 735 ILCS 5-2-1402G, which says anybody who claims an interest in the property which is the subject of a 1402 proceeding has a right to be heard. And we do claim an interest because it's quite possible that that membership interest no longer exists, in which case the charging order, especially if the judge said, Judge Hanlon said in his opinion, the trusts are the member and the trust will continue to be the member, that provides us in our view of our property, our property which is the money we would have had to pay to Freeman but we don't have to pay to him. Right, and that's the standing to challenge the charging order, the effect of the charging order on your clients. And you would have standing to challenge that. What you don't have standing, or at least being argued, what you don't have standing to do is challenge the underlying judgment that forms the basis of the debt. So it's two different things. Yes, you'd have standing, obviously, to challenge the charging order, but you spent a lot of time in the circuit court trying to attack the underlying judgment, which you're not a party and it is final and full faith and credit, and you don't have standing to challenge that. Again, Your Honor, we don't know whether the conveyance of the membership interest in the three LLCs, which I represent, was fraudulent or not. What we argue is that... So we're supposed to tell the New York Bankruptcy Court you're wrong? We're going to ignore your order? The Bankruptcy Court didn't consider these three transfers. It considered transfers of what they called the New York properties. I know there will be some argument by Ms. Wills contrary to this, but we don't think that under New York law, somebody who commits one fraudulent conveyance, that doesn't mean that every conveyance that they made was fraudulent. So you're saying the conveyances here, though even if they may follow the same pattern, they weren't actually involved in the New York... Right, and to be honest, they do follow somewhat of the same pattern. They were made to the same trust. They were made about the same time period, but Sterling Bank did not have a judgment against... It wasn't mentioned if they did. Sterling Bank did not have a judgment against Mr. Friedman at the time he made the transfers. So it's quite possible the New York court would have found that the transfers were not fraudulent as to Sterling Bank. I do want to talk about two of the cases cited by the judgment creditor. The first one is the Bank of America v. Freed case. In that case, the court held only that third-party respondents are not necessarily part of the bank. They're not necessary, but the court did not hold that they don't have the right to be heard if they are present. The other case I want to address briefly is... The judge did hear you all, right? Excuse me? The judge did hear you all, right? He did hear us. He did not rule against us based on standing, but that's been raised in the court. You're just saying necessary party is different than standing, not being a necessary party, just not necessary. That's my point, Your Honor. Okay. The last case I want to address is the Preservation Holdings case. The Preservation Holdings case did talk about Section 1403, which talks about fraudulent conveyances. It talks about trust, talks about conveyances to trust, but that was not an issue in our case, and the Preservation Holdings case did not grant a charging order. The Preservation Holdings case was to determine whether or not the confirmation of the foreclosure of the charging order was appropriate. The Preservation Holdings case... Why does that matter? Because it wasn't deciding whether the charging order was appropriate in the first place. That had been decided earlier in the history of the case. Okay. It's being cited... Would you foreclose on it if it wasn't a legitimate order? We haven't reached that point, Your Honor, because I don't even... No, but I'm saying in the Preservation Holdings case. No, no. The argument in the Preservation Holdings case made by the judgment debtor was that the two properties, the two LLCs, should not have been included in the sale, the foreclosure sale, because they were misdescribed in the LLC's papers. The LLC had submitted an affidavit saying that the judgment debtor was the owner of 47, I think, LLCs. And the judgment debtor said, wait, two of those are owned by a trust. And the court only held that that was not an adequate reason to set aside the... Foreclosure. The foreclosure of the charging orders. If justices have no more questions, I'll let Ms. Wills have her say. Okay. Very good. Thank you. Thank you. Counsel, whenever you're ready. Good morning. May it please the Court, my name is Tina Wills. I represent the creditor and plaintiff appellee, GF Judgments, LLC. This appeal at its core is a straightforward collection matter. GF Judgments obtained a judgment against the debtor, Evagene Friedman, in state court in New York in early 2017. And domesticated that judgment here in Illinois. GF Judgments then instituted supplementary proceedings to try to discover assets of the debtor in Illinois and to satisfy that judgment. To that end, GF Judgments issued citations to three LLCs, the appellants in this case, to determine the membership makeup of those LLCs, as well as to the state of the judgment debtor, as we all agree. The judgment debtor passed. Upon discovery that two self-settled trusts created by the judgment debtor remained 50% members of the LLCs, that's the discovery we learned in the citation proceeding, GF Judgments sought and obtained a charging order against those members' distributional interest in the LLCs under the Illinois LLC Act. The charging order does not give GF Judgments any right to control the operations of these LLCs or to recover property belonging to the LLCs, but only gives it a right to be paid the distributions that would otherwise be paid to the debtor's self-settled trust. We heard some argument today that the New York judgment essentially dissolved the trust. That's not what the New York judgment did. It had an alter ego finding. This is the bankruptcy court. In the bankruptcy court, exactly. There was an alter ego finding. There was a finding that there was a fraudulent transfer. But that does not dissolve the entity of the trust. What it does is for the purposes of a creditor trying to collect a judgment, it allows the creditor to disregard that separate legal entities of the trust and the debtor in order to attach. I'm sorry. What do you make of Mr. Mankiewicz's argument that under New York law, that it's creditor-specific, that not just any – so Citibank would have the benefit of that finding, but Sterling Bank wouldn't? Yeah, I understood that argument. And I think that's incorrect because there are the issues that underlie that determination, that the debtor transferred the assets to the trust, that he did so with the intent to defraud and prevent his creditors from collecting, that he was the beneficiary of the trust, the protector of the trust, the settler of the trust, that under Illinois law, New York law, that renders those assets capable of collection by a creditor because you can't put your assets into trust to avoid your creditors. So those issues were determined in the New York bankruptcy judgment, and those legal issues can be applied here in our collection action. And critically, the estate of the debtor does not object to the charging order. They were party to the proceedings below. That's because the debtor recognized – the estate of the debtor recognizes that a court of competent jurisdiction has already determined the debtor places membership interests into trust as a means to avoid his creditors. So as we discussed, the issue was already litigated against the debtor. What if the trust – I'm sorry, what if the LLC now says, okay, well, there are no distributional interests anymore because Friedman's dead and we're going to ignore the existence of the trust, so there's no distributions. Does that mean you get nothing? Can they just do that? I don't think that they can. While this issue was not fully litigated, the discovery we saw in the citation proceeding was to determine who the members of the trusts – I'm sorry, who the members of the LLCs were. And the information that we obtained from the LLC said that those trusts remained 50% owners. After Friedman's death. After Friedman's death. So there has been no action taken by the LLCs to terminate the interests of a member based on this ruling that they were the alter ego and so it can be disregarded. And even if you could say that those interests terminated upon his death, that termination doesn't mean that those interests revert to the LLC. They have to go somewhere and there has to be some kind of value paid for memberships to be excised from the LLC. And that hasn't happened. This is your responsibility and burden to do that, to file that DEC action to make the determination. I respectfully disagree with that. We have a judgment of a court of competent jurisdiction where the trusts and the debtors were involved and it was determined that the trusts were self-settled and that we could pierce into those trusts to collect as a creditor. We are exercising that issue preclusion in order to also collect on the membership interests. If the LLCs think that there is something that allows them to terminate the interest of the trust that they say is still held by those trusts, it was incumbent upon them to take some action. And approximately, if you know, how far before these collection proceedings did Friedman die? Oh, that's a great question. I'm not actually sure when Mr. Friedman died. The judgment against, well, I guess. Well, you would presume that they knew at the time of these collection proceedings and when they filed their response that they knew Friedman was dead. Yes, that was part of the record. And, well, I just don't know exactly when he died. And their response was, hey, there's a 50 percent interest, ownership interest with respect to these trusts. Exactly. So they didn't say, well, Friedman is dead and terminated. They said currently the status is 50 percent ownership. And they provided us in discovery amended operating agreements, which showed that the LLC accepted the membership transfer from Friedman to the trust in, I believe, 2016. And that is the last discovery we had on the membership interest transfer. And so then as the litigation and the collection proceedings got going, then they're like, oh, by the way, well, there's a provision that says he's terminated. That's correct. And they did raise that argument below, and we did litigate that issue. And respectfully, I don't read the operating agreements the same way, but the court did determine it wasn't before his honor to decide whether or not those interests terminated upon Friedman's death. As it stands, the record is clear that the only membership that is acknowledged by the LLCs is the 50 percent membership ownership of Friedman's LLC, self-settled trust. And those are what we are attaching the charging order to. Except for any other legal issues, there's nothing about this court's ruling either way that would prevent the other side from filing a debt action. I know there may be other legal issues, but this ruling itself would not prevent it. I believe that's correct, because I believe Judge Hanlon was clear in saying he wasn't reaching that issue. Can you explain your standing argument? Because we've had some discussion about it. Well, standing is a fun topic, so I can understand why they all remember it from law school. Exactly. And I was glad to hear counsel brought up the Fawcett v. Walgreen's case. I actually was involved in a meekie brief on that issue, so I'm familiar with the Supreme Court's ruling there as well. But the standing issue in this case is that, you know, we cited the Bank of America case, which essentially says they don't need to be made a party. An LLC doesn't need to be made a party to a statutory action to obtain a charging order because you are not disrupting the operations of the LLC by obtaining the charging order. You're not taking any of the property of the LLC. You're not getting a voting right in the LLC. There's nothing that's happening to the LLC. It's just that instead of the LLC making its distributions to its member, it will now make its distribution that would otherwise go to that member. But that seems to me to be a separate question from whether the LLC has standing to say, no, we don't want to give you this distributional interest for whatever reason. Well, that goes to whether there's an injury, in fact. The LLC is not injured by making the distributions it would otherwise make to its member pursuant to a charging order to the holder of that lien. No more than an employer. I mean, are you suggesting by standing saying they can't bring this appeal, that we shouldn't hear this appeal, they don't have standing to bring this appeal? What are you saying when you say standing? Because to be standing means you don't belong in court. That is one of our arguments, that they don't belong in court. But the challenge, if any, to whether or not the charging order was appropriate should have been brought by the estate. And the estate did not object to the charging order because it was the estate who's claiming they have an interest. But in any, either as a beneficiary of a trust or trial, a third party has a citation or a charging order, they don't have standing to challenge it? Is that what you're saying? What if it's not procedurally correct? I mean, what, you know. Well, then there would be an injury, in fact, right? Well, if it's not their money, according to you, then there's never an injury, in fact. Well, if it's not their money, but if you're a bank and there's some procedural defect and you get a citation to discover assets and you're ordered to turn over that money and you're afraid that because of that procedural defect, you might owe the money to more than one person, then I think... Kind of what they're saying here. But in this circumstance, there's no question from the LLC about who the member is. And so we are only attaching to that member's distributional interest. So anything, the LLC would have had to make that payment to the member. And then their response, they said in answer to the citation, the member of 50% is this... Is the trust. So here, there is no procedural defect that would allow them to say that we could be personally liable, thus we could be injured. They have actually... And that would be very speculative as well. There's no concrete injury, injury in fact, that has occurred to the LLC as a result of this charging order. They get to go about their business as usual. But you would agree that any third party responded to a citation, if they believe that there's some defect or problem with the charging order, they have a right to appeal. Because you say that would actually be an injury in fact. That could be. Yes, Your Honor. I've completely lost where I was in my train of thought. So no, that's totally fine and I'm happy to take more questions. But I think I can just touch on briefly the collateral estoppel and why we think that that was appropriately applied in this case. I think all of the elements are satisfied. There was an issue of law that was adjudicated in the New York courtroom, in the bankruptcy court, that is the same issue that was adjudicated here. And it's, do the trusts hold assets that are capable of being collected by a creditor? That was adjudicated in New York. We were asking for the same relief. There was a final judgment on the merits. I don't think anyone disputes that. There is a question about, they raised an issue about privity. The debtor was a party to the New York bankruptcy proceeding. He is in privity with his estate. I think the law is fairly clear on that point. And the debtor's estate was a party to the citation proceedings below. So there's no unfairness. There's no surprise here. We are simply seeking to attach our lien to what the New York Supreme Court has already said are assets that we can collect on from the debtor. And I also briefly want to touch the point, I agree, bail piercing is not an appropriate, I think the law is clear, use of a supplementary proceeding that requires a separate action. But I think there is a difference between adjudicating a bail piercing argument and asking the court to apply a bail piercing ruling in a supplementary proceeding, which is what we're asking the court to do here. Is there any law that says collateral estoppel is not appropriate in a supplementary proceeding? I mean, that's really what he'd have to argue. Right, and I will be honest, I have researched, I won't promise that I am the best researcher, but I wasn't able to find any case law to that effect one way or the other. So with that, I will yield back the remainder of my time unless the court has any further questions. Thank you. Mr. McGinnis, whenever you're ready. For a point of information, I think the timeline has got a little messed up. The trusts were formed in 2015 and the transfers to the trust took place in 2015. Both the transfers to the trust at issue in this case and the transfers to the trust at issue in the bankruptcy case in New York. Friedman died in October of 2021. I'd like to... When did this proceeding begin, the supplementary proceeding? He died before the supplementary proceeding began. Okay. Although I don't know that our clients were aware of that. Okay. I'm sorry, you don't know if they were aware? We don't know if they were aware that Mr. Friedman had died. I think they likely were aware, but that gets to my point, which is the fact that the amended operating agreement said that the shareholder was the trust, I don't believe is relevant. Many limited liability companies have operating agreements that list who the members are, but it also said if one of those people happens to die, their interest is automatically forfeited. That's what this agreement says. It happens by operation of law upon the death. That only works if you're crediting the New York Bankruptcy Court judgment that disregards the form. That's correct. So, in essence, you're relying collaterally on that judgment. I'm saying if the judgment is accurate, then the interest was forfeited. If the judgment was inaccurate or incomplete, meaning that it couldn't be imported to Illinois by collateral estoppel, then further proceedings are necessary. Well, then the distributional interest would, I assume, go to the trust. If there's no bail piercing, then there's no interest. Because the trust, as I said, did not die when Mr. Friedman died. The trust did not die, and I've heard nothing about the trust going out of existence. We've received no information about that. So then it would flow from anything that came from your clients would go to the trust, and then the debt would collect from the trust. The creditor would start collecting the trust. That would be between the two of them. I'm sorry, not from the trust. The trust they would collect from, I guess, the estate. Right. That would be between the two of them. How does this reversion – is reversion the right word? Yeah. When the partner, when a member dies. I believe the exact language is when a member dies, they are no longer a member. They cease to be a member of the LLC. And it happens automatically.  You don't have to do anything. Yes. Hold on. I'm sorry, but you have trust as members. So it says when a member, trust dies? No, when a member dies. I thought you said it only applies to individuals. Right, so it doesn't apply to trust. It doesn't apply to the trust, correct. Because the trust can't die. Correct. But if the trust was a member, then Judge Hamlin could not hold that proceeding because he was not trying to find property of the judgment debtor. The trust was not the judgment debtor. I'm sorry, so now I don't understand your termination argument because the bankruptcy court, again, doesn't do anything to terminate the form. It just says anything for this individual, we're going to pierce through the form to get to it. So it's not changing anything. The trust, it has no effect on the trust. No, I didn't mean to suggest that it did, Your Honor. I mean, is your argument just it's unfair to treat them as the same for collection purposes but treat them as separate in terms of ownership interests? That's exactly right. He treated Friedman as the owner for collection purposes but then said, well, he wasn't the owner when it came to the question of what happens with the death clause. To answer a question which somebody asked before, the exact language is, a member shall cease to be a member upon the death of such member. I guess it all goes back to Justice Wilson's original suggestion. If the LLC wants to make a determination that Mr. Friedman and Mr. Friedman's trust no longer have an ownership interest in the LLC, somebody needs to file a death action. That is not going to be obvious on its face because somebody is going to have to rely on the bankruptcy court's finding, right? I mean, on paper, they're two separate entities. Yes, and we believe that's the judgment creditor. We believe Illinois law is clear that in a 2-1402 action, that's the burden falls on the judgment creditor. Yes, but you are asking for something beyond paying the distributional interest. You're asking for a finding that this interest no longer exists. I'm not asking for that finding, Your Honor. I'm asking for consistency. Okay. If Judge Hanlon wants to find that the transfer from Mr. Friedman to the trust has to be set aside because a New York judge said it had to be set aside, then he must simultaneously find that Friedman's death has to be taken into account because he then is the owner. But that would cancel the form, which the bankruptcy court specifically was not and did not and probably could not do. I'm sorry. They could not transfer. The bankruptcy court couldn't terminate the trust, and they didn't attempt to terminate the trust. They just said, we're going to ignore it in terms of collecting these debts. That's right. We're going to ignore the trust, and if you ignore the trust, then the interest was terminated when he died. Well, no, the trust still exists. The trust still exists, but that's all that exists. The trust exists, but it's without meaning. It never became an owner. We're just asking for consistency. I'm not sure it's exactly the same question. You haven't convinced us it's exactly the same question. Maybe it is, maybe it isn't, but I think somebody has to declare for you that it is. One other point I'd like to respond to is Ms. Wells made the point that the estate did not object to the charging order. Well, of course they didn't object. It was a way for them to get their debt reduced by taking money from the LLCs that they couldn't have gotten if the charging order wasn't entered, that they couldn't have gotten if Friedman had died. That makes sense. Thank you very much. Thank you, counsel. May I be taken out of my time? Just say there's no such thing as a simple collection. You're wrong. Yes.